Hawthorne v. State.

## JAMES D. HAWTHORNE v. STATE OF NEBRASKA.

### FILED OCTOBER 1, 1895.   No. 6065.

1. **Pleading: DEMURRER.** A demurrer searches the entire record, and judgment should go against the party whose pleading was first defective in substance. *Hower v. Aultman*, 27 Neb., 251, and *Oakley v. Valley County*, 40 Neb., 900, followed.

2. **Contempt Proceedings: AFFIDAVITS: JURISDICTION.** In a proceeding to punish for an alleged contempt, not committed in the presence of the court, the affidavit upon which the proceeding is based is jurisdictional, and it must affirmatively disclose sufficient facts to show that the case is one over which the court has jurisdiction.

3. ———: **WILLFUL DISOBEDIENCE OF ORDER.** Unless the disobedience of an order of court is willful there is no contempt.

4. **Order to Pay Money on Judgment: DISOBEDIENCE: CONTEMPT.** A defendant in a civil action who has failed to comply with an order of court directing the payment by him of a certain sum of money to apply on a judgment recovered therein against him is not liable to punishment as for a contempt in refusing to comply with such order where such disobedience was not willful, but was solely on account of his being insolvent and wholly unable to pay the amount in the order required.

ERROR to the district court for Buffalo county. Tried below before HOLCOMB, J.

*Marston & Nevius,* for plaintiff in error.

*Calkins & Pratt, contra.*

NORVAL, C. J.

This was a proceeding for contempt of court instituted in the county court of Buffalo county, resulting in the conviction and sentence of the plaintiff in error. The district court, on a review of the proceedings, affirmed the judgment, and the cause was removed to this court by petition in error.

The affidavit of Warren Pratt, as the basis of the pro-

ceeding, alleges that on the 19th day of November, 1890,
in an action pending in the county court of Buffalo county,
wherein the Rockford Silver Plate Company was plaintiff
and the said James D. Hawthorne was defendant, the said
county court entered the following order : " Now on this
day, in open court, the parties present by their respective
attorneys, upon mature consideration of all the evidence,
and being fully advised in the premises, it is ordered,
considered, and adjudged by me that the said J. D. Haw-
thorne apply so much of the money shown by his exami-
nation as in his possession as may be necessary to the
satisfaction of the judgment heretofore obtained in the
county court of Buffalo county, Nebraska, by the Rockford
Silver Plate Company against said J. D. Hawthorne in
the sum of $108.11, with interest at seven per cent from
May 15, 1889, which said judgment was duly transcripted
and is now on file in the office of the clerk of the district
court of said county ; and that he pay the costs of this
proceeding, taxed at ——.    Sheriff's fees, 85 cents ; ste-
nographer's fees, $10; and court fees, ——."    The affidavit
further alleges, in effect, that the said Hawthorne prose-
cuted error from this order to the district court, where the
same was affirmed, and the clerk of said last named court,
in accordance with said judgment of affirmance, certified
the decision to the county court that its order might be en-
forced; that a certified copy of the order of the county
court and the affirmance thereof by the district court were
duly served upon said Hawthorne, yet he has disregarded
the order of said court by refusing to comply therewith,
and still refuses to pay said money into said court as
required thereby.    To the affidavit or information, the
plaintiff in error filed the following answer, to-wit : " That
he admits all the allegations and orders set forth in the said
information, but asserts his utter inability to comply with
the order of the court with reference to the payment of the
sum of money named in said information ; that at the time

his testimony was taken, upon which the said order was made, he was wholly mistaken as to the amount of money in his hands, or belonging to him; that in truth and in fact the amount which he stated at that time to be within his control, to-wit, from $180 to $200, was not in money, but was in outstanding bills due to him for labor done at his bench, but which he expected would be paid as money on demand; that had such payments been made he would have been able to comply with the said order of court, but they were not made, and are still outstanding and many of them not collectible; that there has been no time since the entry of said order in which he has been able to comply therewith; that he is the head of a family, residing with the same in said county, and has no means of supporting himself and family, except by his own personal labor, and that it now takes, and has taken since said order was entered, all his earnings to support himself and family; that he disclaims all intention on his part either to disregard or disobey the order of this court, and has not complied with said order for the reason that he is wholly unable to do so.   He therefore asks to be discharged from the alleged contempt of court in not complying with said order.   The state filed a general demurrer to the answer, which the county court sustained, and entered an order adjudging the plaintiff in error guilty of contempt of court as charged, and that he stand committed to the jail of the county until he comply with the order of the court which he had disobeyed.   The demurrer is predicated upon the single ground that the facts set up in the answer are insufficient to excuse him from complying with the order of the county court.   It is a familiar rule of pleading that on demurrer the court must consider the entire record, and judgment must go against the party whose pleading was first defective in substance. (*Bennet v. Hargus*, 1 Neb., 424; *Hower v. Aultman*, 27 Neb., 251; *Oakley v. Valley County*, 40 Neb., 900.)

The first question, therefore, presented for consideration is, does the information, or affidavit, state sufficient facts to constitute a contempt over which the county court had jurisdiction? It is a firmly established doctrine that in, a proceeding to punish for an alleged contempt not committed in the presence of the court, the affidavit on which the proceeding is based is jurisdictional, and all the facts showing that the case is one over which the court has jurisdiction must be affirmatively disclosed by the affidavit. (*Gandy v. State*, 13 Neb., 445; *Ludden v. State*, 31 Neb., 437.) As was said by Wallace, J., in *Batchelder v. Moore*, 42 Cal., 412: "The power of a court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld, except under the circumstances and the manner prescribed by law. It is essential to the validity of proceedings in contempt, subjecting a party to a fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support."

It is urged in the brief filed by the state that the order requiring the plaintiff in error to pay the money into court to apply upon the judgment recovered against him was made in proceedings in aid of execution, instituted under sections 533 and 534 of the Code of Civil Procedure. If this contention is well founded, the record before us fails to disclose the fact. We may surmise, however, that the order was obtained in aid of execution, and if so regarded, how stands the case? By section 533 it is provided that when an execution sued out upon a judgment is returned unsatisfied in whole or in part, a county judge or judge of the district court of the county to which the execution was issued is authorized to issue an order requiring the judgment debtor to appear and answer concerning his property, before such judge or referee appointed by him, at a time and

place to be specified in such order.    The next section reads as follows:

"Sec. 534. After the issuing of an execution against property, and upon proof by affidavit of the judgment creditor or otherwise, to the satisfaction of the district court, or a judge thereof, or a probate judge of the county in which the order may be served, that the judgment debtor has property which he unjustly refuses to apply towards the satisfaction of the judgment, such court or judge may, by order, require the judgment creditor to appear at a time and place in said county to answer concerning the same.    And such proceedings may thereupon be had for the application of the property of the judgment debtor towards the satisfaction of the judgment as are prescribed in this chapter."

It will be observed that the affidavit of Mr. Pratt, which is the foundation of the contempt proceeding, does not allege, nor does the record before us disclose, that any execution was ever issued upon the judgment in the case of the Rockford Silver Plate Company against James D. Hawthorne, or if one was issued that it was ever returned unsatisfied.    Furthermore, the affidavit does not aver that it is in the power of the plaintiff in error to comply with the order of the court, nor does it allege that proof by affidavit or otherwise was made to the county judge that Mr. Hawthorne "has property which he unjustly refuses to apply toward the satisfaction of the judgment rendered against him."    It therefore follows that the affidavit in this case is fatally defective, and the order of the county judge, to which the plaintiff in error refuses to yield obedience, is void, because such judge had no jurisdiction to make the same.    Again, the answer of the plaintiff in error shows that his disobedience of the order was not willful or contumacious, but was occasioned by his not having the property or money wherewith to satisfy the judgment, and for this reason he was entitled to be discharged.    A rule for

contempt for failure to pay a sum of money into court will
be discharged when it is made clearly to appear that at the
time the proceedings in contempt were commenced and
ever since it was not within his power to make the payment,
unless it is disclosed that the party has disabled himself
from paying. (*Adams v. Haskell*, 6 Cal., 316; *Cochran v.
Ingersoll*, 13 Hun [N. Y.], 368; *Ockershausen v. Ockershau-
sen*, 59 Hun [N. Y.], 200; *Pain v. Pain*, 80 N. Car., 322;
*Martin v. Burgwyn*, 13 S. E. Rep. [Ga.], 958; *Hogue v.
Hayes*, 53 Ia., 377; *O' Callaghan v. O' Callaghan*, 69 Ill.,
552.)   The Iowa case cited above is on all fours with the
one at bar.   In a proceeding in aid of execution Hogue, the
judgment debtor, was ordered by Hayes, as judge of the
district court, to pay over to the sheriff $100 and deposit
with the clerk of the court certain notes to apply on a judg-
ment.   Having failed to comply with this order, on applica-
tion of the judgment creditor an attachment was issued
against Hogue to show cause why he should not be punished
for contempt of court.   He filed an answer denying all
contempt of court, and showing that prior to the making of
the order to pay the money he had paid out the same, and
that the notes had been negotiated and had not been in his
control and that it was impossible for him to comply with
the order of court by producing and depositing them.   A
demurrer was interposed to the answer, which was sus-
tained, and Hogue was adjudged guilty of contempt of
court.   Upon a review of the proceedings, Adams, C. J.,
in delivering the opinion of the court, uses the following
apposite language : "The answer shows that the money was
paid out before the order was made, and the notes are not
within the plaintiff's control.   Such being the fact, it was
of course impossible to obey the order, and it follows
that in failing to obey it there was no actual contempt.
The defendant insists, however, that it is immaterial
whether the thing ordered to be done was impossible or not,
or whether there was any actual contempt or not, that if

the order was impossible to be performed it should have been superseded by an appeal, and as that was not done the plaintiff should be imprisoned as for a contempt. The argument is, that plaintiff cannot be heard to set up the impossibility of obeying the order without impeaching, incidentally at least, the correctness of the order, and that that cannot be done in this way. The argument has the merit of being plausible, but we are unable to conclude it is sound. It would result that a person is liable to be imprisoned for life for failing to do an impossible thing, and merely upon the ground that he is estopped from showing that it is impossible. In our opinion the conclusiveness of the correctness of the order does not reach so far as to preclude the plaintiff, upon a proceeding for an alleged contempt, from showing that there was no contempt in fact. The maintenance of the dignity of the court does not require the punishment of a person as for a contempt which had no existence in fact, nor are the rights of the creditor subserved in such case. We think that the judgment of the district court cannot be sustained, and that the order of commitment should be set aside." The cases cited above are equally in point with the one from which the foregoing excerpt was taken. Construing the answer of Hawthorne to the rule to show cause in the light of these decisions, there is no room for doubt that the order committing the plaintiff in error to jail should be vacated and set aside, since it is manifest that he is entirely unable to comply with the order of the county court for the payment of money. Courts will not require of a party an impossibility. There has been no willful disobedience of a lawful order, hence no contempt of court has been committed. The judgment of the district court is reversed and the order of commitment set aside.

REVERSED.