Tasich v. State.

JOHN TASICH v. STATE OF NEBRASKA

FILED DECEMBER 31, 1923.   No. 23461.

1. Contempt: INFORMATION: VERIFICATION: SUFFICIENCY. An affidavit charging an accused with constructive contempt of court, if made by a county attorney, is sufficient to confer jurisdiction, if the complaint of such affidavit be sufficiently direct and positive in its charging part, even though the verification of said affidavit be made upon information and belief. *Belangee v. State,* 97 Neb. 184, overruled in so far as it conflicts with this rule.

2. ———: SUFFICIENCY OF EVIDENCE. *Held,* in this case, that the evidence fully supports the judgment that the accused was guilty of constructive contempt of court in attempting to corrupt a juror during the progress of a case then upon trial, and that a sentence of six months in the county jail therefor was not excessive.

ERROR to the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*E. R. Leigh,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lee Bayse, contra.*

Heard before MORRISSEY, C. J., GOOD and ROSE, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

This action was on an information for constructive contempt. The defendant, John Tasich, plaintiff in error in this court, was charged with attempting to corrupt a juror in order to obtain a verdict of acquittal for his brother, Joe Tasich, who was on trial for shooting with intent to kill. Trial was had to the court. Plaintiff in error was found

guilty, and was sentenced to six months in the county jail of Douglas county.

The evidence fully supports the conviction. During the trial of Joe Tasich before referred to, the plaintiff in error went quite directly from the courtroom to the flour mills where the juror in question was employed and accosted the sales manager, one Pravitz, telling him that his brother was on trial that day and that the mills had a man by the name of Bastain on the jury. He wanted to talk to Bastain and explain to him that his brother was not present at the shooting. Pravitz went to Bastain's room to take the matter up with him, but the latter, who was duly regardful of his juror's duty, told him that it would not be lawful for him to discuss the matter. Thereupon Pravitz returned to his own office, where Tasich, the plaintiff in error, was waiting, and informed him that Bastain was not in, but that he would see him and tell him about it. Tasich asked him to tell Bastain to come to his house that evening in order that he might explain to him. He also suggested to Pravitz that he would come to Pravitz's house that evening, and that together they could go and see Bastain about it. To the credit of Mr. Pravitz it should be said that he did not attempt to advise Bastain of what Tasich said to him. Tasich was a customer of the mills, and for the rest it may be said that in all probability the sales manager did not see fit to repulse him harshly or to dismiss him peremptorily, though well understanding his design. It further appears that plaintiff in error had been present in court during the trial of his brother, where he could hear the instructions of the judge warning the jury not to permit outsiders to talk to them about the case. More than that he was himself personally called to the bench and admonished by the judge not to interfere with the proceedings by talking to the witnesses, and by threatening them. It is quite obvious that the trial judge was justified in finding that Tasich was guilty as charged. The evidence was such as to convince the judge, or jury that this was the case.

From the foregoing it will be clear that the court finds

no merit in the contentions of the plaintiff in error that the judgment was contrary to law, and was not sustained by the evidence. This disposes of assignments 1 and 2 relied upon for reversal.

The main assignment of error is to the effect that the information was not verified positively, but only upon information and belief, and was accordingly not sufficient in law to confer jurisdiction upon the court to punish plaintiff in error for contempt. In the case of *Belangee v. State,* 97 Neb. 184, it was held that an affidavit alleging material facts on information and belief does not give a court jurisdiction in a contempt proceeding. The case is in point. But we are not inclined to adhere to the rule therein announced, because it is not supported by the weight of authority, not well reasoned, and not in accord with the tendency which now obtains in Nebraska to minimize the force of merely technical defenses in criminal practice. In said case there is a strong dissenting opinion, concurred in by two of the other justices of the supreme court, which is entirely persuasive to us in its reasoning. A part of that opinion is as follows:

"The opinion assumes that the evidence is sufficient, and disposes of the case on the insufficiency of the information. The statute makes the acts charged a crime that may be punished by indictment or preliminary examination and information and jury trial, or as a contempt of court. Section 8238, Rev. St. 1913, provides that punishment for contempt shall not be a bar to indictment and trial by jury.

‹ "In this case there was no indictment nor preliminary examination. The information states the facts constituting the contempt of court, and then says: 'In contempt of the said district court, and its dignity.' It is a proceeding for contempt. It contains some allegations that would be necessary in an indictment, and probably some other surplusage, but this would, of course, not invalidate the information, if otherwise sufficient. The allegations of the information are positive, but the verification by the county attorney is upon belief. The opinion holds it void because

of the form of the verification. The question naturally arises: How can a prosecution for contempt in such case be instituted? It will rarely, perhaps never, happen that one person will of his own knowledge know all the facts necessary to constitute the offense. It would seem that the statute which provides that 'the party, upon being brought before the court, shall be notified of the accusation against him, and have a reasonable time to make his defense' (Rev. St. 1913, sec. 8237), does not contemplate any very formal proceeding. This statute seems to be all that there is in the statutes in regard to information or proceeding for constructive contempts. It may be that this court in some earlier cases has gone too far in adding formalities. The cases cited in the opinion, *Ludden v. State,* 31 Neb. 429 (violation of an injunction), the prosecution was to enforce property rights, and neither the affidavits nor evidence showed that the defendant had anything to do with violating the injunction; *Herdman v. State,* 54 Neb. 626 (injunction); *Gandy v. State,* 13 Neb. 445 (attempt to bribe witness); and *Hawthorne v. State,* 45 Neb. 871—all hold that the information must state the facts positively; that is, the 'accusation' against the defendant, of which he must be notified and have time to make defense (section 8237), must be in direct and unequivocal terms, and not guesswork. None of them holds that it must be positively verified, and in one of them *(Gandy v. State)* it would seem there was no verification at all, but that fact is not discussed.

"If knowledge of an attempt to bribe jurors comes to the court, it may, and should, direct the prosecuting attorney to investigate, and, if sufficient evidence is found, prosecute. The county attorney cannot make the verification under this decision, and there is no provision to compel witnesses who knew the facts to make complaint. It would seem, then, that proceedings for contempt in such cases are done away with by the opinion. There remains the slow and doubtful prosecution by indictment or preliminary examination, but this leaves the court helpless for the

Tasich v. State.

time being. He might adjourn the term until a grand
jury or examining magistrate could act."

It is certain that a trial court should not be reduced to
this extremity. Contempt proceedings are not only salu-
tary but necessary upon occasion. Yet it is extremely diffi-
cult to get the citizen to sign a charge against another citi-
zen. The charge naturally and properly becomes the duty
of the county attorney. Nevertheless, as in most criminal
cases, the county attorney has no personal knowledge of the
facts and cannot make an affidavit except upon information
and belief. Must the proceeding fail because of the lack
of positive verification? Positive verification can serve no
purpose except to give weight to the statement of fact.
Such verification is, and should be, only for the private
citizen who makes affidavit. But the county attorney, being
by the nature of his office careful not to proceed unless
upon investigation he finds that there has been an offense
and unless he is advised of evidence to prove it, may be
trusted not to act with unwarranted haste, and yet be relied
upon to act if the need exists.

It is entirely another matter where the charge against
the defendant in constructive contempt proceedings is not
directly and positively made, or where the charge is not
sufficiently defined to apprize the defendant of what he is
required to meet in making his defense. In the case of
*Ludden v. State,* 31 Neb. 429, it was stated in the jurisdic-
tional affidavit that affiant believed that Ludden participated
in the violation of the injunction. In that case this court
found that such an averment in the affidavit was not in the
nature of a direct charge, and was not sufficient to confer
jurisdiction upon the court. And it also found that it
appeared from the record that Ludden was not a party to
such violation of the order of the court. In *Gandy v. State,*
13 Neb. 445, the court said: "In the case at bar there is not
a single fact alleged showing an attempt on the part of
the defendant to improperly influence jurors. That is,
there is no statement of what he did. The information
therefore fails to state an offense." In the case of *Haw-*

*thorne v. State,* 45 Neb. 871, the syllabus was as follows:
"In a proceeding to punish for an alleged contempt, not
committed in the presence of the court, the affidavit upon
which the proceeding is based is jurisdictional, and it must
affirmatively disclose sufficient facts to show that the case
is one over which the court has jurisdiction." The trouble
with the affidavit in the *Hawthorne* case, as in the *Gandy*
case, was that the showing did not go far enough in the
matter of stating facts to support a charge of constructive
contempt. And in that case, as in the *Ludden* case, this
court declared in its opinion that there had been no wilful
disobedience of a lawful order, and that no contempt of
court had been committed.

In the case at bar the guilt of the accused is certain, and
the danger to the administration of the law resulting from
such a thing as he attempted is so great as to warrant
summary action on the part of the trial court, to the end that
the court's proceedings may be respected and effective.
The charge in the case at bar was full and complete, so that
the defendant knew exactly the nature of the offense which
he was called upon to meet. And it was directly and posi-
tively made in the language of the affidavit, though the
affidavit was verified only upon information and belief.
We are of opinion that it was not the intention of the legis-
lature to require the affidavit to be made upon oath when
made by the county attorney, and that the supreme court
should not to this extent curtail the power of county at-
torneys and trial courts to effectively perform their func-
tions. In the case of *Creekmore v. United States,* 237 Fed.
743, L. R. A. 1917C, 845, the court said: "Many states
have laws providing for compulsory affidavits, but our at-
tention has not been called to any such federal statute. To
say that voluntary affidavits must be obtained before the pub-
lic prosecutor can start such proceedings is to say that one
of the most heinous offenses known to the law, that of "jury
fixing,' shall go wholly unpunished. Confronted by such a
danger, we have no hesitancy in holding that the public
prosecutor can file an information for contempt, positive

and specific in its charges, and verify it upon information and belief, and, while such information may not justify the issuance of a warrant of arrest, it is not void, and where a rule is issued upon such information that defendant show cause, and upon the hearing, upon the testimony of sworn witnesses, the evidence shows the defendant guilty, he may be so adjudged, and that a warrant of arrest issued upon the conclusion of the case is upon 'oath or affirmation,' as provided in the fourth amendment to the Constitution."

Our own court, in the case of *Bee Publishing Co. v. State,* 107 Neb. 74, has taken much the same view. The following is from the opinion: "Another feature may be noticed. The verification of the charge by the prosecuting attorney closes with the statement: 'The facts set forth in said information are true to the best of my knowledge and belief.' Defendants argue that, unless the complaint is verified positively, the court is without jurisdiction. The argument is not tenable. They cited *Herdman v. State,* 54 Neb. 626, and *Belangee v. State,* 97 Neb. 184. But in those cases the court did not, as in the present case, order the county attorney to institute the prosecution. It may be noted, however, that the charge in the information, in the present case, is set forth in positive and direct terms. In some cases, in this and other states, this has been held to overcome the defendants' somewhat technical objection. *Emery v. State,* 78 Neb. 547."

While the court refers in the above case to the order to the county attorney to institute the prosecution, it is certain that, if it had regarded a positive verification of the affidavit as jurisdictional, the mere order of the trial court to institute the proceeding would not have been enough to avoid the rule. In other words, the case is an authority for the proposition that, if the charge be direct and positive, the affidavit will be sufficient to confer jurisdiction, even though it be upon information and belief.

In the federal case referred to, some weight was given to the fact that such an objection as is here depended upon was not raised prior to the trial. The same thing

happened in the case of *Johnson v. State,* 53 Neb. 103.   And in *Emery v. State,* 78 Neb. 547, the court said:

"It appears that the complaint in this case is sufficiently positive and certain in its charging part, and the fault, if any, lies in the verification.   But this defect, if it be such, was waived, for we find that the accused made no objection to the complaint, but filed his answer of not guilty, together with a general denial, and immediately announced his readiness to proceed with the trial.   In fact the record shows that this question was raised for the first time by him in his motion for a new trial.   The objection, therefore, comes too late, for one cannot object to the verification of a complaint after he has been arraigned and pleaded not guilty, unless such plea has been withdrawn."

This also argues to the effect that positive verification is not to be deemed jurisdictional, provided that the complaint be positive in its charging part.   And it shows further that this court has not been disposed to attach weight to an objection of the kind made after trial.   In this connection it is proper for us to consider section 10186, Comp. St. 1922.

"No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

The judgment of the district court and the sentence imposed by it were just and right and should be affirmed. Furthermore, the court is disposed to hold, and does hold, that a rule regarding the verification of the affidavit by the county attorney in cases of constructive contempt of court be adopted in consonance with the reasoning of the dissenting opinion in the case of *Belangee v. State, supra.*   If the affidavit be made by the county attorney, and if the complaint thereof be sufficiently positive and certain in its charging part, the affidavit will be deemed to confer juris-

diction upon the court, even though it be verified only upon information and belief.

AFFIRMED.